# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEAN O'SULLIVAN | CIVIL ACTION |
| VERSUS | No. 17-609 |
| SUNIL GUPTA, M.D., LLC ET AL. | SECTION I |

### ORDER AND REASONS

Before the Court are two motions[1] to dismiss and compel arbitration filed by the defendants. For the following reasons, the Court grants the motions in part and denies them in part.

### I.

Sean O'Sullivan is an ophthalmologist employed by defendant Retina Specialty Institute ("RSI").[2] He works at two of RSI's locations in Metairie and Covington, Louisiana. Defendants Sunil Gupta, Magdalena Shuler, John Myers, and Alan Franklin are also ophthalmologists. They are partners and managing members of RSI.

O'Sullivan filed this lawsuit because he believes that RSI and the individual defendants violated his employment contract when they failed to make him a partner at RSI. He claims the individual defendants received distributions from RSI to which he was entitled. As the result of these beliefs, O'Sullivan no longer wants to work for

---

[1] R. Doc. Nos. 24, 25.
[2] Technically, RSI is owned by Sunil Gupta, M.D., LLC, which is the named defendant in this case. The Court refers to the company as RSI from here forward in order to avoid confusion with defendant Sunil Gupta, one of the individual managers of RSI.

RSI. He intends to sever his employment with the company and start a competing practice. There is only one thing stopping him: a non-compete agreement with RSI, the violation of which would expose O'Sullivan to approximately $3 million dollars in liquidated damages.

Claiming that he cannot stay with RSI but that he faces financial ruin if he leaves, O'Sullivan asks the Court to enter a declaratory judgment that the non-compete agreement is unenforceable. He also asks for damages related to RSI's alleged violation of the employment agreement. Because O'Sullivan's employment agreement is with RSI and not the individual defendants, O'Sullivan's claims against the individual defendants are premised on the theory of unjust enrichment.

## II.

In the first motion, RSI argues that O'Sullivan's declaratory judgment claim should be dismissed for lack of subject matter jurisdiction because there is no case or controversy regarding the non-compete agreement. RSI further argues that O'Sullivan's remaining contractual claims against RSI must be arbitrated in Pensacola, Florida under the employment agreement. Because the non-compete agreement is specifically carved out of the arbitration agreement in O'Sullivan's employment contract, the two issues must be analyzed separately.

### A.

A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists between the parties. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties

having adverse legal interests." *Id.* (internal quotation marks omitted). Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis. *Id.*

O'Sullivan continues to work for RSI. He has not yet violated the non-compete agreement. While O'Sullivan would like to stop working for RSI and to begin a competing practice, he claims he will not be able to do so unless he can first obtain a declaratory judgment that the non-compete agreement is unenforceable. Without such a judgment, O'Sullivan alleges that should he compete with RSI, he runs the risk of financial ruin if the non-compete agreement is found enforceable in a subsequent lawsuit (assuming that the $3 million dollar liquidated damages provision is also found enforceable). If O'Sullivan cannot obtain a declaratory judgment, he claims that he faces a Hobson's choice—he cannot risk violating the agreement and waiting to be sued because he cannot afford to pay the liquidated damages if he loses.

Arguing that O'Sullivan's predicament does not create an actual controversy, RSI characterizes O'Sullivan's fears that RSI will sue him as soon as he begins to compete as "speculation" and "conjecture." *See* R. Doc. No. 24-1, at 6. Though RSI nowhere promises that it will not sue O'Sullivan if he violates the agreement, neither has RSI explicitly threatened O'Sullivan with a lawsuit. O'Sullivan identifies other lawsuits which have been filed by RSI against former employees who left the company and started competing businesses, but RSI distinguishes those actions because they did not occur in Louisiana and because they purportedly occurred under "completely

3

different" circumstances. *See* R. Doc. No. 33, at 5. RSI emphasizes repeatedly that "litigation is not a certainty." *See* R. Doc. No. 33, at 4.

In the declaratory judgement context, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix*, 212 F.3d at 897; *see also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 163 (5th Cir. 2015) (citing *Orix* for this proposition). "The fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action." *Orix*, 212 F.3d at 897. "However, in determining whether a justiciable controversy exists, a district court must take into account the likelihood that these contingencies will occur." *Id.* The party asserting that an actual controversy exists has the burden of establishing its existence by a preponderance of the evidence. *See State of Tex. v. W. Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989).

RSI may be correct that litigation is not a certainty, but O'Sullivan does not need to prove that a lawsuit is certain in order to establish an actual controversy. He need only show a "specific and concrete" threat of litigation. *See Orix*, 212 F.3d at 897. O'Sullivan has met that burden. While "unasserted, unthreatened, and unknown claims" cannot form the basis of a declaratory judgment action, *see id.* at 896, the claim which O'Sullivan anticipates that RSI will bring against him is known,

4

specific, and probable. It is not necessary that RSI explicitly threaten O'Sullivan with litigation. The test does not turn on whether demand letters are sent, as threats of litigation are neither necessary nor automatically sufficient to establish an actual controversy. *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 751 (5th Cir. 2009). RSI has a history of bringing lawsuits to enforce non-compete agreements against former employees. The fact that those agreements were governed by the laws of other states or that the former employees may have left RSI under different circumstances is not dispositive. The totality of the circumstances suggest that if O'Sullivan starts a competing practice, there is a concrete threat that RSI will sue him. The immediacy and the reality of the dispute are sufficient to warrant a declaratory action. *See MedImmune*, 549 U.S. at 127.

That the filing of a lawsuit hinges on the occurrence of two contingencies within O'Sullivan's control—O'Sullivan terminating his employment at RSI and O'Sullivan starting a competing business—does not render the litigation unlikely. The amended complaint states that O'Sullivan intends to do both of those things, *see* R. Doc. No. 9, at 8 ¶ 30-32, and RSI does not challenge the authenticity of O'Sullivan's intentions. Although both of the contingencies may be within O'Sullivan's control and although it is true that O'Sullivan has specifically delayed their occurrence until this point in time, federal courts have "long accepted jurisdiction" in cases where "the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party." *MedImmune*, 549 U.S. at 130.

Finally, the seriousness of the penalty faced by O'Sullivan if he violates the non-compete agreement is an additional factor which weighs in favor of finding an

5

actual controversy. Courts are generally more willing to countenance a plaintiff's preference to seek declaratory relief rather than waiting to be sued where the damages faced under the latter course of action would be ruinous. *See Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496, 499 (7th Cir. 2014) (Posner, J.). That consideration is especially acute in the context of non-compete clauses, which are widely disfavored. *See Team Envtl. Servs., Inc. v. Addison*, 2 F.3d 124, 126 (5th Cir. 1993) (recognizing "Louisiana's longstanding policy against covenants not to compete"). The non-compete clause cannot be used as a knife to O'Sullivan's throat. The declaratory judgment action arises from an actual controversy, and it can go forward.

## B.

RSI next argues that O'Sullivan's remaining claims for breach of contract and breach of the duty of good faith must be arbitrated under the employment agreement. This time, the Court agrees with RSI. O'Sullivan's contract with RSI not only provides that "any claim, controversy, dispute or disagreement arising out of or relating to" the employment agreement must be resolved through arbitration, but also that any claim, controversy, dispute or disagreement "arising out of the employment relationship created by" the employment agreement and its negotiation must be resolved through arbitration. *See* R. Doc. No. 24-3, at 11-12.

O'Sullivan argues that the Court should not enforce the arbitration agreement because it would not be economical to divide his declaratory judgment action and his breach of contract action. But "when a complaint contains both arbitrable and nonarbitrable claims, the [Federal Arbitration Act] requires courts to compel

6

arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (internal quotation marks omitted).

O'Sullivan also argues that the employment agreement's arbitration provision conflicts with the agreement's "Choice of Governing Law and Forum" provision, and it therefore should not be enforced. The choice of governing law and forum provision states that "Each Party stipulates and agrees to the exclusive jurisdiction and venue of the state court in and for the county where the Employer's facility at which the Employee worked is located. . . ." *See* R. Doc. No. 24-3, at 10. The arbitration provision is located one page further into the employment agreement. It provides that all employment-related disputes "be submitted to confidential mandatory binding arbitration which shall be conduct in the Pensacola, Florida, area." *See* R. Doc. No. 24-3, at 11-12.

There is nothing at odds between the provisions. It is not inherently conflicting for a contract to include both an arbitration provision and a choice of law and forum provision. Court litigation may follow arbitration, and a forum selection agreement may specify where such post-arbitration litigation should take place. As such, the provisions in the employment agreement can be reconciled, especially considering that the arbitration provision specifically contemplates that litigation may follow the alternative dispute resolution required by the contract. *See* R. Doc. No. 24-3, at 12 ("No litigation shall be commenced unless the foregoing procedures are followed.").

7

Pursuant to the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This Court will compel arbitration of O'Sullivan's contractual claims and breach of the duty of good faith claims against RSI.

### III.

O'Sullivan also asserts claims against the partners and managing members of RSI—Gupta, Shuler, Myers, and Franklin[3]—based on an unjust enrichment theory. He claims that the individual defendants received the money to which he was entitled under his employment agreement with RSI. The individual defendants argue that the Courts lacks personal jurisdiction over them.

### A.

When foreign defendants move to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's personal jurisdiction over each of the defendants. *Wilson v. Belin*, 20 F .3d 644, 648 (5th Cir. 1994). Where the Court rules without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case that the Court has jurisdiction over a defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the defendants dispute the factual bases for jurisdiction, "the court may receive

---

[3] Defendant Alan Franklin remains unrepresented in this matter and he has not made an appearance. Because O'Sullivan's claims against Franklin are identical in all material respects to his claims against the other managers of RSI, however, the Court's analysis is dispositive of the claims against Franklin.

interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (internal quotation marks omitted). The Court should not, however, act as a fact finder and it must construe all disputed facts in the plaintiff's favor. *Id.* In this case, as of yet, there are no disputed facts pertaining to the jurisdictional question.

A federal court may only exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Because the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits, the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242-43 (citing *A & L Energy, Inc. v. Pegasus Grp.*, 791 So.2d 1266, 1270 (La. 2001)).

"[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*,

9

471 U.S. 462, 474 (1985) (internal quotation marks omitted). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475.

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung*, 379 F.3d at 343. "Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant." *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal quotation marks omitted). "Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted).

O'Sullivan does not allege that the individual defendants are subject to general personal jurisdiction, but he does argue that specific personal jurisdiction is present as to each individual. The Fifth Circuit has articulated the following three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the

> defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

**B.**

Three of RSI's managers are Florida residents, and one is an Alabama resident. None of the managers practice medicine in Louisiana. The managers are not parties to the contract between O'Sullivan and RSI. O'Sullivan's argument that the managers are subject to personal jurisdiction in this state focuses on three points: (1) that as managers of RSI the defendants authorized the company's locations in Louisiana, (2) that as managers of RSI the defendants received substantial revenue from RSI's locations in Louisiana; and (3) that RSI's contract with O'Sullivan was performed in Louisiana, called for the application of Louisiana law, and specified venue in Louisiana courts.

The contacts described by O'Sullivan are contacts between Louisiana and RSI—not contacts with the individual managers of the company. Unless the company is an alter ego of its individual employees, "the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a company." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790

11

(1984). The Court is unconvinced at this time that personal jurisdiction exists over the individual defendants.

O'Sullivan requests that if the Court concludes as much it should allow him time to propound limited jurisdictional discovery. This Court has broad discretion to determine whether such discovery would be appropriate. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). To support a request for jurisdictional discovery, a plaintiff must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing does not require proof that personal jurisdiction exists, but rather "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (internal citation omitted).

The Court will allow limited jurisdictional discovery to take place. The affidavits submitted by the defendants do not foreclose the possibility of personal jurisdiction, and the circumstances suggest a reasonable likelihood that, as the result of their positions at RSI, the RSI managers have sufficient minimum contacts with this state to establish jurisdiction. Phone calls, letters, business trips, etc. may be sufficient in certain circumstances to establish specific personal jurisdiction. O'Sullivan may propound discovery on such issues. The Court will not consider the individual defendants' arguments that the unjust enrichment claims fail or that they are subject to arbitration until it resolves whether personal jurisdiction exists.

**IV.**

For the reasons explained above,

**IT IS ORDERED** that RSI's motion to dismiss the declaratory judgment action is **DENIED**, but that RSI's motion to compel arbitration of the remaining claims is **GRANTED** and that arbitration of the remaining claims against RSI is **COMPELLED**.

**IT IS FURTHER ORDERED** that the individual defendants' motion to dismiss is **DENIED WITHOUT PREJUDICE**. O'Sullivan may propound discovery on the defendants with respect to the personal jurisdiction issue. Such discovery shall be completed by **June 30, 2017**. Defendants may re-file their motion no later than **July 14, 2017**, and O'Sullivan shall respond by **July 24, 2017**, at which time the Court will take the motion under submission. Any discovery disputes which arise in connection with this order shall be promptly brought to the attention of this Court.

New Orleans, Louisiana, May 1, 2017.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**