UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN O'SULLIVAN                                              CIVIL ACTION

VERSUS                                                       No. 17-609

SUNIL GUPTA, M.D., LLC
ET AL.                                                       SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiff Sean O'Sullivan for summary judgment against defendant Sunil Gupta, M.D., LLC ("RSI"). RSI opposes the motion.[2]

For the foregoing reasons, the Court will grant the motion as set forth herein.

## I.

The following facts are undisputed: Sean O'Sullivan is an ophthalmologist employed by RSI—shorthand for the Retina Specialty Institute[3]—which is owned by Sunil Gupta, M.D., LLC.[4] O'Sullivan works at RSI's two locations in Louisiana, one in Metairie and the other in Covington.[5]

When O'Sullivan joined RSI, O'Sullivan and RSI executed a Noncompetition and Nonsolicitation Agreement ("RSI Agreement")[6] designed to restrict O'Sullivan's

---

[1] R. Doc. No. 52.
[2] R. Doc. No. 55.
[3] R. Doc. No. 52-1, ¶¶ 1-2; R. Doc. No. 55-1, at 1.
[4] R. Doc. No. 39, at 1.
[5] *Id.*; R. Doc. No. 52-1, ¶¶ 14-15; R. Doc. No. 55-1, at 2.
[6] The parties agree that R. Doc. No. 52-2, at 3-10, is a true and accurate copy of the Agreement. R. Doc. No. 52-1, ¶ 3; R. Doc. No. 55-1, at 1.

1

ability to compete against RSI if and when O'Sullivan left RSI.[7] The RSI Agreement provides in part that "for a restrictive period of two (2) years following either the expiration or termination of" O'Sullivan's employment from RSI "for any reason," O'Sullivan will not compete against RSI by engaging in the practice of ophthalmology, or advertising for or soliciting patients, in the "Restrictive Territory."[8] The RSI Agreement also limits O'Sullivan's ability to solicit RSI employees.[9]

The RSI Agreement defines the "Restrictive Territory" as "the geographical area inside of a fifty (50) mile radius of any office or facility of Employer which exists or existed at the time during the Employment relationship."[10] With respect to the two-year "restrictive period," the RSI Agreement provides for its automatic extension "for whatever length of time" that O'Sullivan is in violation of the RSI Agreement, or when "[a]ny litigation (including appeals) is pending" that challenges or seeks to enforce the RSI Agreement.[11]

The RSI Agreement also includes several reformation and severability provisions. One of these provisions provides that the invalidation of any portion of the RSI Agreement does not affect the enforceability of the remaining portions.[12] Another provides that "[i]f the period of time or geographic area specified in th[e] [RSI] Agreement should be adjudged unreasonable in any proceeding, then the period

---

[7] R. Doc. No. 52-1, ¶ 3; R. Doc. No. 55-1, at 1.
[8] R. Doc. No. 52-2, at 5.
[9] *Id.* at 6.
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.*

2

of time or geographic area shall be" reformed "so that such restrictions may be enforced for such time or geographic area as is adjudged to be reasonable and enforceable, and shall not affect the enforceability of any other provision."[13]

O'Sullivan has now moved[14] the Court for summary judgment as to his claim for declaratory judgment. O'Sullivan argues that certain portions of the RSI Agreement—namely, paragraphs 5 through 8, as well as paragraphs 11 and 13—violate Louisiana law, and are therefore null and void. Defendant opposes[15] O'Sullivan's motion as overbroad.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

---

[13] *Id.*
[14] R. Doc. No. 52.
[15] R. Doc. No. 55, at 1.

3

Once the party seeking summary judgment carries its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue of material fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### III.

Louisiana—whose law governs the interpretation and enforcement of the RSI Agreement[16]—has a "longstanding policy against covenants not to compete." *Team*

---

[16] Louisiana law governs this dispute both by operation of law, *see Bell v. Rimkus Consulting Group, Inc. of Louisiana*, 983 So.2d 927, 933 (La. Ct. App. 2008), and pursuant to the RSI Agreement's choice of law provision. *See* Doc. No. 52-2, at 8 (RSI Agreement's choice of law provision); *see also* La. R.S. § 23:921(A)(2) (providing that choice of law provisions in employment contracts are "null and void" unless "expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action"); R. Doc. No. 52-3, at 8 (O'Sullivan agreeing that "[t]he [RSI] Agreement's choice-of-law provision is enforceable under Louisiana law").

4

*Envtl. Serv., Inc. v. Addison*, 2 F.3d 124, 126 (5th Cir. 1993); *see also Water Processing Tech., Inc. v. Ridgeway*, 618 So.2d 533, 535 (La. Ct. App. 4th Cir. 1993) ("A contract or agreement which prohibits an employee from competing with a former employer consistently has been found to be against public policy in Louisiana."). Under La. R.S. § 23:921, the general rule is that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind . . . shall be null and void." La. R.S. § 23:921(A)(1). However, where such contracts and agreements meet certain strict requirements, they "shall be enforceable." *Id.* Specifically:

- "Any person . . . may agree" not to (1) carry on or engage in a business similar to the employer's business ("noncompetition agreement"), or (2) solicit the employer's customers ("nonsolicitation agreement");
- "Any person . . . may agree" to a noncompetition or nonsolicitation agreement "within a specified parish or parishes, municipality or municipalities, or parts thereof," as long as the employer operates in those locations ("geographic requirement"); and
- "Any person . . . may agree" to a noncompetition or nonsolicitation agreement "not to exceed a period of two years from termination of employment" ("time requirement").

*Id.* § 23:921(C). In short, "a valid non-competition agreement may limit competition *only* in a business similar to that of the employer, in a specified geographic area, for up to two years from termination of employment." *Parker v. Surface Works, Inc.*, No.

5

2015-1583, 2016 WL 5110048, at *3 (La. Ct. App. 1st Cir. Sept. 16, 2016) (emphasis in original); *see also Affordable Roofing, Siding, and Gutters, Inc. v. Artigues*, No. 16-16872, 2017 WL 713693, at *3 (E.D. La. Feb. 23, 2017) (Africk, J.) ("Non-solicitation of customers provisions in Louisiana are subject to the same restrictions as non-compete provisions.").

"Public policy requires that covenant-not-to-compete agreements must be strictly construed in the employee's favor." *Daiquiri's III on Bourbon, Ltd. v. Wandfluh*, 608 So.2d 222, 224 (5th Cir. 1992) (internal quotation marks omitted); *see also Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 288 (5th Cir. 2012) (citing *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 2001)). In that vein, these contracts and agreements "must strictly comply with the requirements contained in the statute." *Team Envtl. Serv.*, 2 F.3d at 126 (quoting *Comet Indus., Inc. v. Lawrence*, 600 So.2d 85, 88 (La. Ct. App. 2d Cir. 1992)).

With respect to La. R.S. § 23:921's geographic requirement, courts treat "mechanical adherence" to the statute as "especially" imperative. *Gearheard v. De Puy Orthopaedics, Inc.*, No. 99-1091, 1999 WL 638582, at *4 (E.D. La. Aug. 19, 1999) (Clement, J.) (internal quotation marks omitted). The Court itself recently emphasized that strict observance of the geographic requirement was consistent with both the statute's plain text and policy objectives.[17] *See Affordable Roofing*, 2017 WL

---

[17] In *Affordable Roofing*, the Court noted that the Louisiana Third Circuit Court of Appeal has adopted a more liberal approach to La. R.S. § 23:921(C)'s geographic requirement. *See* 2017 WL 713693, at *2. The Court rejected that approach as inconsistent with both the statutory text and purpose. *See id.* at *2-*3. For the same reasons outlined in *Affordable Roofing*, the Court does so again.

6

713693, at *2-*3. As such, "[t]he absence of the required geographic limitation is fatal to a noncompetition agreement and renders it invalid." *Action Revenue Recovery, L.L.C. v. eBusiness Group, L.L.C.*, 17 So.3d 999, 1003 (La. Ct. App. 2d Cir. 2009).

Moreover, "[b]ecause [the geographic requirement] . . . speaks to non-competition 'within a specified parish or parishes, municipality or municipalities, or parts thereof,' Louisiana courts have stated that non-competition agreements failing to specify the parish, municipality or parts thereof are unenforceable." *Gearheard*, 1999 WL 638582, at *4 (quoting La. R.S. § 23:921(C)); *see also id.* (citing cases). For example, where noncompetition or nonsolicitation agreements define their geographic scope in miles, rather than municipalities—or parishes, or parts thereof—courts have routinely invalidated them. *See, e.g.*, *Team Envtl. Serv.*, 2 F.3d at 126 ("On their face, LRI's agreements do not conform to the statutory requirements because they prohibit competition within 200 miles of the employees' base of operations rather than specifying the parishes or municipalities in which LRI does business."); *Francois Chiropractic Center v. Fidele*, 630 So.2d 923, 926 (La. Ct. App. 4th Cir. 1993) (invalidating a covenant not to compete that prohibited competition "within a ten (10) mile radius of the outer city limits of New Orleans, Louisiana," *id.* at 924); *Medivision, Inc. v. Germer*, 617 So.2d 69, 73 (La. Ct. App. 4th Cir. 1993) (concluding that a covenant not to compete is unenforceable where it bars the employee from "providing ophthalmological services within ten miles of any office of" the employer, *id.* at 70).

## IV.

O'Sullivan challenges certain provisions of the RSI Agreement as transgressing La. R.S. § 23:921. The Court will examine each of these provisions in turn.

### A.

O'Sullivan first challenges the legality of paragraph 5 of the RSI Agreement, which is designated as a covenant not to compete. Paragraph 5 provides that O'Sullivan—"for a restrictive period of two (2) years following either the expiration or termination of [O'Sullivan's] employment with [RSI] for any reason"—"<u>shall not</u>":

- (a): "Practice the medical specialty of ophthalmology or retinal surgery within the Restrictive Territory . . . in any capacity . . . that competes with any part of [RSI's] business . . .";
- (b): "Perform services or maintain staff privileges" at any medical facility "within the Restrictive Territory . . . which competes with any part of [RSI's] business";
- (c): "[A]dvertise in or solicit patients in the Restrictive Territory"; or
- (d): "[A]ccept or engage in any business or activity that requires him to use or reveal any confidential business information."[18]

Paragraph 5 also includes an exemption from subsections (a) through (d) for O'Sullivan's teaching position at the Louisiana State University ("LSU") School of Medicine.[19]

---

[18] R. Doc. No. 52-2, at 5 (emphasis in original).
[19] *Id.*

8

**i.**

For starters, subsections (a) through (c) of paragraph 5 aim to restrict O'Sullivan's ability to practice ophthalmology and so constitute "provision[s] . . . by which [O'Sullivan] is restrained from exercising a lawful profession, trade, or business." La. R.S. § 23:921(A)(1). As such, these provisions are subject to § 23:921. RSI does not argue otherwise.[20]

However, O'Sullivan and RSI dispute whether subsection (d) of paragraph 5 is subject to § 23:921. Pointing out that subsection (d)'s language aims to protect RSI's putative confidential business information,[21] RSI argues that subsection (d) is simply a confidentiality agreement.[22] If RSI is correct, then subsection (d) is not subject to § 23:921 and is enforceable under Louisiana law. *See Novelaire Tech., L.L.C. v. Harrison*, 50 So.3d 913 (La. Ct. App. 4th Cir. 2010) ("An employer may require an employee not to disclose confidential information."); *Maestri v. Destrehan Veterinary Hosp., Inc.*, 554 So.2d 805, 810 (La. Ct. App. 5th Cir. 1989); *Engineered Mech. Serv., Inc. v. Langlois*, 464 So.2d 329, 334 n.15 (La. Ct. App. 1st Cir. 1984) ("Confidentiality

---

[20] *See* R. Doc. No. 55.
[21] The RSI Agreement states that "RSI has a legitimate and protectable interest in trade secrets and confidential business information including, but not limited to, patient lists and data, third-party information, billing rates, fee structure for services, marketing plans, contracts and fee schedules with managed care plans, hospitals, insurers and other third-party payers, patient records, lists of vendors and contractors, subcontracts with health care providers, goodwill and reputation, its Clients and its Service Area which it has developed, and its protocols and procedures." *Id.* at 4. The parties have not asked the Court to resolve the scope of RSI's protectable business information, but the Court points out that RSI's business information must be "in fact confidential" to be contractually protectable by RSI. *NHC Corp. v. Broyles*, 749 F.2d 247, 253 (5th Cir. 1985).
[22] *See id.* at 3-5; R. Doc. No. 64.

9

agreements have been held enforceable and not subject to the prohibition (and requirements) of La. R.S. 23:921.").

In contrast, O'Sullivan argues that subsection (d) constitutes a classic covenant not to compete and therefore it is subject to § 23:921.[23] O'Sullivan points to decisions from other jurisdictions in which courts have construed similar language in employment contracts as creating covenants not to compete.[24] O'Sullivan also points to language in the RSI Agreement that suggests that the parties intended subsection (d) to operate as a covenant not to compete.[25]

When sitting in diversity, a federal court applies state substantive law—in this case, Louisiana law. *See Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). To determine Louisiana law, the Court looks to the final decisions of the Louisiana Supreme Court. *See In re Katrina Canal Breaches Liti.*, 495 F.3d 191, 206 (5th Cir. 2007). Where the Louisiana Supreme Court has not addressed an issue, the Court "must make an *Erie* guess and determine, in [its] best judgment, how that court would resolve the issue if presented with the same case." *Id.*; *see also Stanley v. Trinchard*, 500 F.3d 411, 423 (5th Cir. 2007). However, when making this guess, the Court "adhere[s] to Louisiana's civilian decision-making process, by first examining primary sources of law: the constitution, codes, and statutes" of Louisiana. *Moore,* 556 F.3d at 270.

---

[23] *See* R. Doc. No. 63.
[24] *See id.* at 1-3 (discussing *Baxter Healthcare Corp. v. HQ Specialty Pharma. Corp.*, 157 F. Supp. 3d 407 (D.N.J. 2016), and *G & W Elec. Co. v. Joslyn Manu. & Supply Co.*, 468 N.E.2d 449 (Ill. Ct. App. 1984)).
[25] *See id.* at 3.

10

The Louisiana Civil Code provides that the "[i]nterpretation of a contract is the determination of the [objective] common intent of the parties." La. Civ. C. art. 2045 & cmt. (b). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* art. 2046. Moreover, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* art. 2050.

Giving the words of subsection (d) their "generally prevailing meaning," *id.* art. 2047, the Court concludes that subsection (d) falls within the scope of § 23:921. Subsection (d) explicitly targets O'Sullivan's ability to "accept or engage in [ ] business or activity."[26] In other words, the restraint on revealing confidential information is nested within a restraint on O'Sullivan's ability to exercise "a lawful profession, trade, or business"—the hallmark of a covenant not to compete that is subject to § 23:921.[27] La. R.S. § 23:921(A)(1); *cf., e.g., Baxter Healthcare Corp. v. HQ Specialty Pharma. Corp.*, 157 F. Supp. 3d 407, 415 (D.N.J. 2016) (labeling an employment contract provision that precluded the employee from employment "potentially

---

[26] R. Doc. No. 52-2, at 5. Despite subsection (d)'s plain language, RSI oddly asserts that subsection (d) "does not prohibit [O'Sullivan] from engaging in any business or activity." R. Doc. No. 64, at 3. RSI's contention is either deeply confused or patently disingenuous.

[27] RSI argues that subsection (d) does not target "a lawful profession, trade, or business," La. R.S. § 23:921(A)(1), because any job that required O'Sullivan to reveal RSI's confidential information would be unlawful under Louisiana law. R. Doc. No. 64, at 2-3. RSI's objection is inapt: while a particular job that O'Sullivan could accept may run afoul of Louisiana law, O'Sullivan's *profession*—ophthalmology— undoubtedly constitutes a "lawful profession" under § 23:921.

11

involv[ing] the disclosure or use of" the employer's confidential information as a "prototypical non-compete provision"); *Whirlpool Corp. v. Burns*, 457 F. Supp. 2d 806, 812 (W.D. Mich. 2006) (analyzing an employment contract provision that prohibited the employee "from competing with [the employer] in any business where his disclosure or use of [the employer's] confidential information would facilitate or support the performance of his job duties" as a covenant not to compete).

The fact that the restraint on O'Sullivan's post-RSI employment opportunities is structured around the protection of RSI's putative confidential business information does not change the objective intent of the parties: that subsection (d) of paragraph 5 function as a covenant not to compete. Moreover, least there be any doubt as to the parties' intent, the Court need only look to the label that the parties themselves attach to paragraph 5: "COVENANT NOT TO COMPETE."[28]

Restrictions that protect confidential information by targeting job opportunities, as opposed to exclusively targeting disclosure, are quintessential covenants not to compete. Subsection (d) is one such covenant. It is susceptible to no other meaning. *See id.* art. 2049. Therefore, subsection (d) is subject to § 23:921.

### ii.

As they purport to restrain O'Sullivan "from exercising a lawful profession, trade, or business," subsections (a) through (d) of paragraph 5 are all presumptively null and void under La. R.S. § 23:921(A)(1).

---

[28] R. Doc. No. 52-2, at 5.

However, subsections (a) through (d) all qualify as noncompetition agreements under § 23:921(C): by restricting O'Sullivan's ability either to join an existing ophthalmology practice or to start his own practice,[29] each provision operates to limit O'Sullivan from practicing ophthalmology in competition with RSI. In other words, these provisions restrict O'Sullivan "from carrying on or engaging in a business similar to that of" RSI. La. R.S. § 23:921(C). The Court must next consider whether the subsections conform to § 23:921's geographic and time requirements for such agreements to be enforceable. *See id.*

Subsection (d) does not satisfy § 23:921's geographic requirement, as it features no geographic limitation whatsoever. Therefore, subsection (d) is unenforceable under Louisiana law. *Action Revenue Recovery*, 17 So.3d at 1003.

Subsections (a) through (c) all reference the "Restrictive Territory," which the RSI Agreement defines as "the geographical area inside of a fifty (50) mile radius of any office or facility of Employer which exists or existed at the time during the Employment relationship."[30] Yet a geographic limitation defined in miles does not

---

[29] Part of subsection (c) restricts O'Sullivan from "solicit[ing] patients in the Restrictive Territory." R. Doc. No. 52, at 5. In order to constitute a nonsolicitation agreement under § 23:921(C), however, the provision would have to target the solicitation of *RSI's current patients* and not simply *potential* RSI patients. *See* La. R.S. § 23:921(C); *SWAT 24*, 808 So.2d at 306-07. The restriction on soliciting potential patients is better understood as a noncompetition agreement, as it restricts O'Sullivan from "from carrying on or engaging in a business similar to that of" RSI. La. R.S. § 23:921(C); *cf., e.g., Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 559 (2d Cir. 1969) (classifying a restrictive covenant in which a distributor "covenants and agrees not to sell, advertise, install or otherwise promote" a product other than the one produced by the manufacturer as a covenant not to compete).
[30] R. Doc. No. 52-2, at 5.

13

satisfy § 23:921's geographic requirement, which obliges the parties to a noncompetition agreement to list "a specified parish or parishes, or municipality or municipalities, or parts thereof" to be covered by said agreement. La. R.S. § 23:921(C); *see, e.g., Team Envtl. Serv.*, 2 F.3d at 126; *Medivision*, 617 So.2d at 69.

### iii.

While the RSI Agreement provides for the reformation of the "Restrictive Territory" where it is "adjudged unreasonable,"[31] Louisiana courts routinely refuse to reform unenforceable geographic restrictions in covenants not to compete, even where enforceable restrictions are discernable. *See, e.g., Kimball v. Anesthesia Specialists of Baton Rouge*, Inc., 809 So. 2d 405, 413 (La. Ct. App. 2001); *Water Processing Tech., Inc. v. Ridgeway*, 618 So.2d 533, 536 (La. Ct. App. 1993); *Medivision*, 617 So.2d at 69; *see also Gearheard*, 1999 WL 638582, at *6 (E.D. La. Aug. 19, 1999) (Clement, J.) ("Ordinarily, . . . Louisiana courts decline to save invalid non-competition provisions through reformation." (internal citation omitted)). The Court has likewise declined to rewrite invalid provisions of covenants not to compete in other cases. *See Affordable Roofing*, 2017 WL 713693, at *3. The Court does so again: it is the job of the parties, not the Court, to write a legally valid contract.

Paragraph 5, subsections (a) through (d), are null and void.[32] In light of the RSI Agreement's severability provision, the Court will sever these provisions from

---

[31] *Id.* at 6-7.
[32] O'Sullivan also challenges paragraph 5 on the ground that it transgresses La. R.S. § 23:921's time requirement for noncompetition and nonsolicitation agreements. *See* R. Doc. No. 52-3, at 15; *see also* La. R.S. § 23:921(C) (providing that such agreements cannot "exceed a period of two years from termination of employment"). Because the

14

the RSI Agreement. *See id.* ("The severability clause does not 'require a court to reform, redraft, or create a new agreement. It require[s] only that the offending portion of the agreement be severed.'" (quoting *SWAT 24*, 808 So.2d at 309)).

**B.**

O'Sullivan also challenges the legality of paragraph 8, which is designated as a covenant not to solicit or disclose. Paragraph 8 includes numerous subsections:

- Subsections (a)(1) and (b) restricts O'Sullivan from both soliciting RSI's current patients, as well as soliciting certain pools of potential patients;

- Subsections (a)(2) and (a)(3) restricts O'Sullivan from soliciting RSI's employees;

- Subsections (c), (e), and (f) define RSI's property and limit O'Sullivan's control over said property; and

- Subsection (d) defines who constitutes a patient of RSI for purposes of the RSI Agreement.[33]

Of these subsections, only (a)(1) and (b) fall within the purview of La. R.S. § 23:921. Subsections (a)(2) and (a)(3) concern employee solicitation, and "non-solicitation of *employees* clause[s], as distinct from [ ] non-solicitation of *customers* clause[s], [are] not subject to the requirements of La. R.S. § 23:921." *Affordable Roofing*, 2017 WL 713693, at *3 n.3 (citing *Smith, Barney Harris Upham & Co., Inc. v. Robinson*, 12

---

Court determines that paragraph 5 is null and void for not complying with the geographic requirement, the Court does not address whether paragraph 5 complies with the time requirement.
[33] R. Doc. No. 52-2, at 6.

F.3d 515, 519 (5th Cir. 1994)) (emphasis added).  Moreover, subsections (c) through (f) do not purport to restrict O'Sullivan's employment opportunities in any way and so § 23:921 likewise does not apply to these provisions.

With respect to subsections (a)(1) and (b), both fall within the scope of § 23:921 and are presumptively null and void: if O'Sullivan cannot attract patients, then he is certainly "restrained from exercising a lawful profession, trade, or business." La. R.S. § 23:921(A)(1).  However, both provisions may yet be enforceable as either noncompetition or nonsolicitation agreements, as defined in § 23:921(C).

Subsection (a)(1) provides that O'Sullivan "shall not . . . accept, solicit, divert, or take away any patient of [RSI] for the purposes of promoting services similar to those rendered by [RSI]."[34]  While subsection (a)(1) restrains O'Sullivan from "soliciting customers of" RSI in part, subsection (a)(1) also restrains O'Sullivan "from carrying on or engaging in a business similar to that of" RSI.  La. R.S. § 23:921(C). Under this provision, not only is O'Sullivan restricted from soliciting RSI's patients, but O'Sullivan is restricted from even accepting RSI patients who freely seek out his professional services—*i.e.*, RSI patients that he does not solicit.  As such, subsection (a)(1) constitutes a nonsolicitation agreement in part and a noncompetition agreement in part.

Subsection (b) consists of two clauses.  Clause 1 of subsection (b) provides that "any promotion, mailings, or advertisements directed to patients of [RSI]" by

---

[34] *Id.*

16

O'Sullivan will violate the RSI Agreement.[35] As clause 1 prevents O'Sullivan from "soliciting customers of" RSI, it is a nonsolicitation agreement. *Id.*

Clause 2 of subsection (b) provides that "any promotion, mailings, or advertisements . . . made within the Restrictive Territory [by O'Sullivan] conveying the relocation of or the establishment of [O'Sullivan's] practice after [his] employment with [RSI] terminates" will violate the RSI Agreement.[36] Clause 2 restricts O'Sullivan's ability to promote his services and thereby compete in the ophthalmology market—if he cannot inform potential patients where he is operating, then he seems unlikely to attract the business of many of those potential patients.[37] As such, clause 2 of subsection (b) hinders O'Sullivan from "carrying on or engaging in a business similar to that of" RSI and so constitutes a noncompetition agreement. *Id.*

Although qualifying as noncompetition or nonsolicitation agreements, subsections (a)(1) and (b) must still comply with § 23:921's geographic and time requirements in order to be enforceable. Neither complies with the geographic requirement. Subsection (a)(1) and clause 1 of subsection (b) do not enumerate any geographic limitation whatsoever and so are unenforceable. *See Action Revenue Recovery*, 17 So.3d at 1003. Clause 2 of subsection (b) does set out a geographic limitation by referencing the "Restrictive Territory," but—as previously explained— the RSI Agreement's definition of "Restrictive Territory" does not satisfy § 23:921's

---

[35] *Id.*
[36] *Id.*
[37] *Cf. supra* note 31.

17

geographic requirement. *See* La. R.S. § 23:921(C); *see also, e.g., Team Envtl. Serv.*, 2 F.3d at 126; *Medivision*, 617 So.2d at 69.

Paragraph 8, subsections (a)(1) and (b), are therefore null and void,[38] and will be severed from the RSI Agreement. *See Affordable Roofing*, 2017 WL 713693, at *3.

**C.**

In addition, O'Sullivan challenges paragraph 13, which addresses liquidated damages in the event that O'Sullivan violates paragraph 5. "Parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation." La. Civ. C. art. 2005. "That stipulation gives rise to a secondary obligation for the purpose of enforcing the principal one." *Id.* However, "[n]ullity of the principal obligation renders the stipulated damages clause null." *Id.* art. 2006.

As previously explained, subsections (a) through (d) of paragraph 5 are null and void. The only surviving provision of paragraph 5 is an exemption from subsections (a) through (d) for O'Sullivan's teaching position at the LSU School of Medicine.[39] The Court therefore nullifies paragraph 13 as Louisiana law directs, as O'Sullivan simply cannot be in violation of paragraph 5. *See id.*

**D.**

---

[38] O'Sullivan also challenges these provisions on the grounds that they transgress La. R.S. § 23:921's time requirement for noncompetition and nonsolicitation agreements. *See* R. Doc. No. 52-3, at 15; *see also* La. R.S. § 23:921(C). Because the Court determines that these provisions are null and void for not complying with the geographic requirement, the Court does not address whether they comply with the time requirement.

[39] R. Doc. No. 52-2, at 5.

18

Lastly, O'Sullivan challenges paragraphs 6, 7, and 11 of the RSI Agreement. Paragraph 6 provides that the RSI Agreement's two-year "restrictive period" shall be extended if certain conditions are met.[40] Paragraph 7 defines the term "Restrictive Territory" as used in the RSI Agreement.[41] Paragraph 11 provides certain stipulations relevant to an injunctive relief analysis, presumably to allow RSI—in the event that O'Sullivan breaches a valid provision of the RSI Agreement—to more easily meet its burden of showing that injunctive relief against O'Sullivan is appropriate.[42]

O'Sullivan contends that paragraphs 6 and 7 violate § 23:921.[43] However, § 23:921 only concerns restraints "from exercising a lawful profession, trade, or business of any kind." La. R.S. § 23:921(A)(1). Paragraphs 6 and 7 are not *themselves* such restraints. What O'Sullivan seems to really mean is that paragraphs 6 and 7—which are incorporated into various other provisions of the RSI Agreement—render those *other provisions* problematic under § 23:921. That may be the case, but then the problem is those provisions—not paragraphs 6 and 7. Those two paragraphs standing alone do not run afoul of § 23:921.

O'Sullivan does not explain why paragraph 11 runs afoul of § 23:921 or any other provisions of Louisiana law.[44] In fact, O'Sullivan's more-than-cursory discussion of paragraph 11 strongly suggests that O'Sullivan tossed in a challenge to

---

[40] *Id.*
[41] *Id.*
[42] *Id.* at 7.
[43] *See* R. Doc. No. 52-3, at 14-16.
[44] *Id.* at 17.

19

paragraph 11 in the present motion without so much a thought as to its legality. The Court sees no basis for holding paragraph 11 null and void as a matter of law.

V.

Accordingly,

**IT IS ORDERED** that the motion is **GRANTED** as set forth herein. Paragraph 5, subsections (a), (b), (c), and (d); paragraph 8, subsections (a)(1) and (b); and paragraph 13 of the RSI Agreement are hereby declared **NULL AND VOID**, and are severed from the RSI Agreement.

**IT IS FURTHER ORDERED** that the case is **STAYED AND ADMINISTRATIVELY CLOSED** pending final resolution of the arbitration of all remaining claims against RSI and the individual defendants. *See* 9 U.S.C. § 3. Any party may move to reopen the case upon written motion within 30 days of the final resolution of the arbitration.

New Orleans, Louisiana, August 10, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**